JOHN PETERSON, Guardian of the Minor Heirs of TOLLEF PETERSON, Deceased, v. ALBERT BRACKEY and TURINE BRACKEY, Appellants.

Intoxicating liquors: DAMAGES: EVIDENCE. The evidence in this action, brought on behalf of minors for injury to their support by the giving of liquor to their father causing his death, is held to support a finding that defendants gave deceased sufficient alcohol to produce his death.

Same: JOINT LIABILITY OF HUSBAND AND WIFE: JUDGMENT: MOTION IN ARREST. Where a husband and wife are joined as defendants the question of their joint liability can not first be raised by a motion in arrest of judgment; it should be presented to the court either

by the pleadings or one of the several proper methods during the trial.

**Evidence:** LIFE EXPECTANCY: TABLES. Life tables while not conclusive are admissible on the question of the life expectancy of a deceased, although he may have been addicted to the use of intoxicating liquors; and should be considered in connection with the evidence of his physical condition, his vocation and habits in determining his probable length of life.

**Expectancy of life:** INSTRUCTION. On the question of damages to be allowed decedent's minor children because of their father's death, the result of excessive use of liquor furnished by defendants, an instruction to. consider the physical condition, habits, ability of decedent to furnish them support and the probable duration of such support, reducing the amount, if any, to its present value was sufficient, in the absence of a request for a more specific instruction in relation to the expectancy of the life of decedent.

**Intoxicating liquors:** CIVIL ACTION: EXEMPLARY DAMAGES. A guardian of minor children who have been injured in their support by the act of another in furnishing the parent intoxicating liquor, is entitled under the statute to exemplary damages, the jury being authorized to exercise its discretion in the matter merely as to the amount.

**Evidence:** HYPOTHETICAL QUESTIONS: INSTRUCTIONS. An instruction directing the jury to determine whether the facts stated in a hypothetical question were substantially as proven, and if not substantially proven as stated the answer of the witness to be given no consideration, is held not to have been misleading because of the use of the word "substantially."

*Appeal from Winnebago District Court.*—HON. C. H. KELLY, Judge.

THURSDAY, MARCH 11, 1909.

REHEARING DENIED SATURDAY, JUNE 5, 1909.

ACTION in behalf of the minor heirs of Tollef Peterson, deceased, to recover damages for injury as to their means of support and exemplary damages, on account of the giving to deceased, who was a person in the habit of

becoming intoxicated, of intoxicating liquors, causing him
to become intoxicated and resulting in his death. There
was a verdict for plaintiff, and from judgment thereon
the defendants appeal.—*Affirmed.*

*L. A. Jensen,* for appellants.

*Gordon & Belsheim,* for appellee.

McCLAIN, J.—The defendants are husband and wife,
the latter being the sister of the wife of deceased. The
two families resided on farms in the same general neigh-
borhood, and on Sunday, the 14th day of July, 1907,
defendants drove to the home of the deceased on a friendly
visit, and also with the purpose of discussing with de-
ceased a proposed trade of hogs. Defendants had with
them in their buggy a bottle containing a mixture of
alcohol and water for use as a beverage, from which, at
the solicitation of defendants, the deceased took a drink.
About sundown, at the invitation of defendants, the de-
ceased and his wife, in a separate conveyance with three
of their small children, went with defendants to their
home for the purpose of seeing the hogs offered to be
traded. On arriving there the defendant Albert Brackey
directed his wife to mix up some more liquor, which she
did, filling a teacup, as she testified, with one part alcohol
and two parts water, from which deceased and his wife
and Albert Brackey drank, using a little glass which could
be dipped into the teacup. Of this mixture the deceased
drank two glasses. About this time Turine Brackey, at
her husband's suggestion, brought up from the cellar a
quart bottle of beer, of which deceased drank about one-
third. Albert Brackey and the deceased then went to the
barn, and on returning, another teacup full of the alcohol
mixture was fixed up, and the deceased again drank two
glasses. Then the parties went to look at the hogs, and,

returning, another cupful of mixed alcohol was prepared, this time as Turine Brackey testified with one-third alcohol, one-third water, and one-third coffee. The wife of deceased, who had been drinking of the mixture with her husband, felt "dizzy and funny" from what she drank, and something was said about the drink being too strong. Supper was served by defendants about ten o'clock. The wife of deceased became sick and lay down on a bed, and the deceased lay on the floor near by. About one o'clock the defendants went to bed in another part of the house, leaving deceased on the floor. The next morning the wife of deceased found him dead beside the bed, where he had been the night before. Two physicians, one of them the coroner, testified that in their opinion he had died as the result of drinking too much liquor. In addition to this evidence, as to which there is no particular controversy, there was proof in behalf of plaintiff of declarations of defendant Turine Brackey that her husband had, after the drinking by deceased described above, given him a drink of undiluted alcohol. This declaration was made after Turine Brackey had ceased to live with her husband. There is some conflict in the evidence as to the amount of alcohol consumed by the parties on this evening, Turine Brackey testifying that a two-gallon jug full of alcohol had been brought home by her husband after the 4th of July, only a small portion of which had been used prior to the evening in question, but she testified that there was only about a quart of alcohol left in the jug at that time, and that during the evening the jug was emptied.

I. In behalf of defendant Albert Brackey it is contended that a motion to direct a verdict in his favor should have been sustained, for the reason that, aside from the evidence relating to declarations of Turine Brackey as to his administering to deceased a drink of pure alcohol, which declarations were not admissible as against him, there was not suffi-

1. INTOXICATING LIQUORS: damages: evidence.

cient evidence to justify a finding by the jury that suffi-
cient alcohol had been given deceased to cause his death.
A reading of the entire record satisfies us that this con-
tention is without merit. The whole question was left
to the jury, with instructions not complained of in this
respect, and the conclusion of the jury that there was suffi-
cient evidence to support a finding for the plaintiff against
Albert Brackey can not properly be interfered with.
There was expert evidence tending to show that not to
exceed one-third of a quart of pure alcohol taken within
twenty-four hours might cause death, and there is enough
in the record, without the declarations of Turine Brackey,
to support a finding by the jury that deceased was given
that amount.

II. By motion in arrest of judgment an effort was
made by defendants to raise the question whether Turine
Brackey was properly joined as defendant with her hus-
band, the claim being that she was pre-
sumed to act under the coercion of her hus-
band. The overruling of this motion is as-
signed as error. It is sufficient to say that
no such question was raised during the trial. No special
pleading was necessary to raise the question, but by re-
quest for instructions the defendant Turine Brackey could
have had the question submitted to the jury, if proper for its
consideration, and, by motion to direct a verdict in her
favor for want of evidence to charge her with liability,
the court could have been called upon to rule upon the
question as a matter of law. But in no manner, in plead-
ings, offers of or objections to evidence, motion to direct
a verdict, or request for instructions, did counsel advise
the court that Turine Brackey's joint liability for any tort
found to have been committed was questioned. There
was ample evidence that she acted on her own responsi-
bility, and not under her husband's coercion in mixing
the liquor and giving it to deceased, and in giving him his

*2. SAME: joint liability of husband and wife: judgment: motion in arrest.*

part of the bottle of beer. She can not first complain in a motion in arrest of judgment that a question of fact was not passed upon by the court or expressly submitted to the jury.

III. Life tables offered in evidence for plaintiff were objected to by defendant on the ground that it affirmatively appeared that in view of the habits of decedent such tables did not tend to show what his expectancy of life would have been. But such tables may go to the jury for what they are worth, although they relate to the expectancy of a person in good health, and without impairment by bad habits. They are not conclusive, but may be considered by the jury in connection with evidence as to the physical condition, vocation and habits of the person, whose probable length of life is to be estimated by the jury. *Troll v. Chicago, R. I. & P. R. Co.,* 115 Iowa, 80; *Farrell v. Chicago, R. I. & P. R. Co.,* 123 Iowa, 690; *Croft v. Chicago, R. I. & P. R. Co.,* 134 Iowa, 411; *Clark v. Van Vleck,* 135 Iowa, 194. In *Knott v. Peterson,* 125 Iowa, 404, this court has expressly held life tables admissible in actions of this character.

3. EVIDENCE: life expectancy: tables.

IV. The instruction given by the court to the jury for determining the allowance to be made in behalf of each of the minor heirs in case the jury should determine upon a verdict for the plaintiff is complained of, in that no rule is given to the jury for determining the reasonable expectancy of the life of deceased. But the jury was told to consider the physical condition, habits and probable ability of the deceased to furnish his children support, and also the probable duration of such support, taking into consideration all the evidence introduced on the trial upon the subject, reducing the amount, if any, to its present worth or value. In the absence of a request for any more specific instruction we think this was sufficient, and that the jury

4. EXPECTANCY OF LIFE: instruction.

could not have been misled into thinking that they were to give no consideration to the life tables on the one hand, or on the other hand that such tables were conclusive.

V.   We can discover no error in the instructions with reference to the right of plaintiff to recover, under the provisions of Code, section 2418, relating to recovery, by
5. INTOXICATING LIQUORS: civil action: exemplary damages. a guardian for a minor child of one whose intoxication has been caused by the act of another in selling or giving intoxicating liquors to the parent, of the damages suffered in person, property, or means of support by reason of such act.   It is complained that the court directed the jury to allow exemplary damages, but the statute expressly provides that the wrongdoer in such case shall be liable for exemplary damages, and the awarding of such damages is discretionary with the jury only as to amount if the wrong is established.   *Fox v. Wunderlich,* 64 Iowa, 187; *Thill v. Pohlman,* 76 Iowa, 638; *Miller v. Hammers,* 93 Iowa, 746.

VI.   With regard to the testimony of medical men, given in answer to hypothetical questions, the jurors were instructed as follows:   "If the evidence introduced upon
6. EVIDENCE: hypothetical questions: instruction. the trial shows the acts, conduct, demeanor and conditions of said Tollef Peterson to have been substantially as stated in such hypothetical questions, then the testimony of such medical witnesses, based upon such questions, may be given such weight and value as you believe them fairly entitled to. If, however, the evidence in this case does not substantially sustain the supposed state of facts presented in the hypothetical questions asked such witnesses or if the testimony of such witnesses is in conflict with physical facts, then you should attach no weight whatever to the answers of medical witnesses founded thereon."   While it is left to the jury in this instruction to determine whether the facts assumed in the hypothetical questions have been found by the jury to be "substantially as stated in such hypothetical

questions," yet the jury is told that if not found to be substantially as stated, the answer of the medical witnesses to such questions are to be given no weight whatever. This we think to be in accordance with the rule announced in *Kirsher v. Kirsher,* 120 Iowa, 337; *Stutsman v. Sharpless,* 125 Iowa, 335; *Ball v. Skinner,* 134 Iowa, 298; *Madden v. Saylor Coal Co.,* 133 Iowa, 699; *In re Jones,* 130 Iowa, 177, and *Vannest v. Murphy,* 135 Iowa, 123. In these cases it was held erroneous to leave it to the jury to say whether the facts stated in the hypothetical question are unsupported by the evidence in material respects or how much weight shall be given to the answers if there is a discrepancy between the facts assumed in the questions and those shown by the evidence. In the case last cited an instruction is criticised which left it to the jury to say whether the statements of fact assumed in the hypothetical questions were substantially correct, but it is not intimated that the case would have been reversed on this ground. It certainly is not necessary that the facts assumed in a hypothetical question shall be proven in every material detail to the dotting of an "i" and the crossing of a "t," and, while the court might properly have omitted the word "substantially," we can not believe that the jurors were misled by its use. It was not left to them to say which of the facts recited were material, but only to say whether the facts recited were substantially proven; that is, whether each of them was in substance found supported by a preponderance of the testimony. We think there was no prejudicial error in the instruction as given.

VII. The instructions asked for defendants and refused by the court are sufficiently covered by those given by the court on its own motion, and need not be specifically discussed.

We have considered the many other errors assigned, but find no questions raised which are of sufficient importance to merit a discussion.

Appellants' motion, submitted with the case, to strike appellee's amendment to the abstract, and to tax the cost of portions thereof to appellee, is overruled.

There is no prejudicial error in the record, and the judgment is *affirmed.*