OPINION OF THE COURT
Frederick D. Dugan, J.
Petitioner, a registered psychologist, seeks reargument on his motion to quash a subponea duces tecum (CPLR 2304) issued by respondent. The subpoena, dated October 2, 1979, requires the petitioner to appear before a Grand Jury and produce "all records pertaining to the treatment” of seven identified patients on whose account Medicaid reimbursement was sought from the Monroe County Department of Social Services. On its face, the subpoena seeks production of all records reflecting the extent and dates of petitioner’s treatment of the seven named Medicaid patients, as well as all records pertaining to Medicaid billings for them since January
I, 1976.
Upon his reargument, petitioner seeks an order to quash, fix conditions or modify the subpoena duces tecum upon the grounds that, (1) this investigation is barred by a civil compromise reached between petitioner and the Department of Social Services, settling a dispute over billing for treatment of the same patients named in the subpoena now under review, (2) the subpoenaed materials are covered by the psychologist-client privilege (CPLR 4507) and a hearing must be held on the voluntariness of waivers of the privilege allegedly signed by these patients and (3) records specified are petitioner’s personal papers and are protected from seizure by the Fourth and Fifth Amendments of the United States Constitution.
Genesee Valley Chapter, American Civil Liberties Union (hereafter ACLU) has previously been permitted to intervene as amicus curiae (see Matter of Doe v Hynes, Supreme Ct, Monroe County, Oct. 24, 1979, Dugan, J.) in regard to the Medicaid patients’ rights to confidentiality and privacy in their dealings with licensed psychologists.
*400 In its previous ruling, this court denied petitioner’s motion to quash upon its finding that the seven named patient-clients executed written waivers of the psychologist-client privilege (Matter of Doe v Hynes, Supreme Ct, Monroe County, Nov. 30, 1979, Dugan, J.). Issues involving the scope of the privilege and the circumstances under which it can be abrogated were not then reached.
Upon this resubmission, petitioner questions the validity of the consents obtained by the respondent Deputy Attorney-General and, in that regard, has submitted letters purportedly written by two of the named patients revoking their waivers of the privilege. With respect to the remaining patients, petitioner questions the circumstances under which the waivers were obtained and the competency of the patients to understand the nature of their act.
Arguments were heard on January 14, 1980 and all parties were permitted to submit additional memoranda of law. The ACLU waived further argument and submitted on its prior brief.
Petitioner’s first argument in support of his motion to quash the subpoena duces tecum involves his claim that the State of New York should be barred from taking any further action against petitioner because a civil compromise was reached on June 18, 1979 between petitioner and the Department of Social Services, Bureau of Medicaid Fraud and Abuse, whereby all claims of so called "double-billing” were settled. Petitioner construes this agreement as a general release which bars the State of New York, through its agent, the Deputy Attorney-General for Medicaid Fraud Control, from conducting further investigations into any past conduct of petitioner with respect to his participation in the Medicaid program. Relying on contract theory, petitioner claims that the agreement negotiated by the Medicaid Fraud Bureau of the Department of Social Services cannot be disavowed by the Deputy Attorney-General for Medicaid Fraud Control because the current Grand Jury investigation is, essentially, an attempt at restitution and the State of New York has settled whatever claims it may have against petitioner.
Notwithstanding the obvious alignment between his past and present antagonists, petitioner’s reliance on contract theory is misplaced.[1] While it is true that the doctrine of collat *401 eral estoppel is applicable to criminal proceedings (Matter of Levy, 37 NY2d 279; Matter of McGrath v Gold, 36 NY2d 406; People v Legrand, 88 Misc 2d 685) litigations of an issue of fact can only be foreclosed when it has already been determined by a valid and final judgment in a trial involving the identical parties. In the case at bar, the Medicaid Fraud Bureau of the Department of Social Services and the Deputy Attorney-General for Medicaid Fraud Control are different entities; only the latter is authorized to bring criminal actions (Executive Law, § 63, subd 3).
Similarly, petitioner faces no threat of double jeopardy. "The constitutional prohibitions against double jeopardy and double punishment do not prevent the Legislature from enacting, and the executive from enforcing, civil as well as criminal sanctions for the same conduct.” (Matter of Barnes v Tofany, 27 NY2d 74, 78; see, also, People v Barysh, 95 Misc 2d 616; Matter of Brawer v Criminal Ct. of City of N. Y., 47 Misc 2d 411.)
Whatever inequities petitioner alleges to exist as a result of this inquiry, they are not here to be acted upon, though he may address them if and when an indictment is handed up, possibly in a motion to dismiss in furtherance of justice (CPL 210.40).
For his second argument, petitioner contends that a hearing must be held on voluntariness of the waivers allegedly given by the seven named patients to the Deputy Attorney-General. However, the question of waiver need be reached only if this court finds no merit in respondent’s arguments that (1) the psychologist-client privilege does not apply to the Deputy Attorney-General for Medicaid Fraud Control with respect to Medicaid patients and (2) even if the privilege does apply, New York State’s interest in investigation and preventing fraud in the Medicaid program overrides the public policy interest in preventing limited disclosure. The ACLU, in its brief, takes issue with both of these arguments put forth by respondent.
The Deputy Attorney-General contends that his office is within the parameter of the psychologist-client privilege be *402 cause the privilege protects only a patient-client’s reasonable expectations of privacy as to his disclosures made during the course of treatment and that it is unreasonable for such a patient to expect that no information would be conveyed to third parties whatsoever. For example, respondent argues, doctors consult with colleagues in an effort to determine the most appropriate course of treatment.[2] By extension, respondent argues, it would be unreasonable for a patient receiving government supported medical services to expect that his records would be withheld from the agencies charged with the administration of such medical programs.
Additionally, respondent argues that the regulatory framework underlying the Medicaid program establishes the Deputy Attorney-General’s right of access to the records of Medicaid patients. The statutes and regulations cited by respondent not surprisingly establish a network for communicating information between health care contractors and the Department of Social Services and the Federal Government.
Although it is clear that the Department of Social Services can require sufficient information from its contractors before payment is made, it does not follow that all revelations made by a patient to his psychologist must be drawn into this vast exchange of information, as well. The elderly, the infirm and the indigent should be imposed upon no more than reasonably necessary by virtue of their status; in the absence of an express statutory provision excepting the Department of Social Services or the Deputy Attorney-General for Medicaid Fraud Control from the relevant privileges, this court is not inclined to require these patients to leave their hopes of privacy at the clinic door.[3] "On the assumption that the privilege is valuable, it is unsound to deny it to a person merely because he is too poor to afford a private physician or private hospital.” (5 Weinstein-Korn-Miller, NY Civ Prac, par 4504.12.)
Respondent’s suggestion that those agencies charged with *403 the administration of the Medicaid program were intended to be within the umbrella of confidentiality because this regulatory framework was promulgated after the enactment of these privileges cuts both ways. It would be just as logical to assume that the Legislature, in its effort to address Medicaid law in a comprehensive way, declined to carve out such an exception to the statutory privileges.
While this court declines to hold that the Deputy Attorney-General for Medicaid Fraud Control and, by implication, the entire Department of Social Services are within the parameter of the psychologist-client privilege so that any and all disclosures made by patients in the course of treatment may, as a matter of routine, be disclosed, this does not end the inquiry.
Respondent argues that, even if his office is found to be outside the privilege, there is a compelling State interest which overrides the interest in confidentiality present herein. The court is thus called upon to determine whether the public policy served by investigation and elimination of Medicaid fraud justifies abrogating the privilege, particularly where the inquiry is limited in scope.
"[T]he recognition of a privilege does not mean that it is without conditions or exceptions. The social policy that will prevail in many situations may run foul in others of a different social policy, competing for supremacy. It is then the function of a court to mediate between them, assigning, so far as possible, a proper value to each, and summoning to its aid all the distinctions and analogies that are the tools of the judicial process.” (Clark v United States, 289 US 1, 13 [Cardozo, J.].)
The appointment of a Deputy Attorney-General to investigate corruption in the publicly funded health care system is a valid exercise of executive, power (Matter of Sigety v Hynes, 38 NY2d 260). Pursuant to this mandate, the Deputy Attorney-General may employ nonjudicial subpoenas to conduct the necessary investigations. Such subpoenas must bear a reasonable relation to the subject matter under investigation and be consonant with the public purpose sought to be achieved. (Matter of Windsor Park Nursing Home v Hynes, 42 NY2d 243.)
Some of the records sought by the respondent are not covered by the psychologist-client privilege. Presumably, that portion of the subpoena which requests "all records pertaining to medicaid billings for the above named patients” is directed *404 only to documents kept by petitioner in the regular course of his business and it is unlikely that they reflect "confidential relations and communications” as specified in the statute (CPLR 4507). In addition, there is authority for the proposition that those facts which are plainly observable by a layman, such as the dates and times of visits and the fees charged, are not within the privilege (see Gourdine v Phelps Mem. Hosp., 40 AD2d 694; Matter of Judicial Inquiry Pursuant to Order of App. Div., 2d Dept. [Anonymous "P” — Hurley], 8 AD2d 842).
This court holds that the strong State interest in preventing Medicaid fraud outweighs the interests of these seven patients in keeping their records a private matter between themselves and their psychologist. (See 5 Weinstein-Korn-Miller, NY Civ Prac, par 4504.09.)
Since it is determined that the respondent is entitled to the records sought in the subpoena duces tecum, the issues of the competency of the patients to give written privilege waivers and whether the waivers were voluntarily executed are not reached.
Regarding petitioner’s third argument that the Fifth Amendment of the United States Constitution prevents production of the records sought in the subpoena duces tecum, the law is clear. The constitutional privilege against self incrimination may be invoked in any civil, criminal and investigatory, accusatory or legislative inquiry. (Ronayne v Lombard, 92 Misc 2d 538.) However, as was noted in this court’s previous decision, petitioner’s assertion of his Fifth Amendment rights is premature. "[T]he privilege against self incrimination may not be asserted or claimed in advance of questions actually propounded” (People v Laino, 10 NY2d 161, 174; see, also, Matter of Wilman Agency, 178 Misc 549).
Petitioner’s motion is denied.

. There is an obvious inconsistency between the Deputy Attorney-General’s argu *401 ment that, on one hand, his office should not be bound by the civil compromise entered into by the Department of Social Services and his argument, on the other hand, that his office is not within the scope of the psychologist-client privilege because of his office’s identification with the Department of Social Services in its administration of the Medicaid program.

. For the purposes of this opinion, this court finds the psychologist-client privilege to be coextensive with the physician-patient privilege (see State of Florida v Axelton, 80 Misc 2d 419) although the statute, on its face, appears to give the psychologist-client privilege greater breadth (see 5 Weinstein-Korn-Miller, NY Civ Prac, par 4504.02).

. To the extent that 18 NYCRR 515.4 (a) (3) can be read to require unlimited revelation of confidential communications, it directly conflicts with a specific legislative enactment (CPLR 4507) and is, therefore, not controlling. (See Park Place-Dodge Corp. v Collins, 75 Misc 2d 25; 2 NY Jur 2d, Administrative Law, § 49.)