Sherry **CHIDESTER**, **Cavallin Clinic, Plaintiffs,**

v.

**Honorable Gene NEEDLES, Judge of the Fifth Judicial District, Defendant.**

**No. 83–1135.**

Supreme Court of Iowa.

Aug. 22, 1984.

John P. Roehrick of Roehrick & Hassel, P.C., Des Moines, for plaintiffs.

Thomas J. Miller, Atty. Gen., Mary Jane Blink, Asst. Atty. Gen., and Dan L. Johnston, County Atty., for defendant.

Considered by REYNOLDSON, C.J., and UHLENHOPP, LARSON, SCHULTZ and WOLLE, JJ.

WOLLE, Justice.

We granted certiorari in this contempt proceeding to determine whether the district court erred in requiring the plaintiff Sherry Chidester to produce certain medical records which the county attorney had

subpoenaed for investigative purposes, pursuant to Iowa Rule of Criminal Procedure 5(6). The medical clinic, employer of plaintiff Sherry Chidester, moved to quash the subpoena duces tecum and resisted contempt proceedings on both statutory and constitutional grounds, contending (1) that production would violate the physician-patient privilege of Iowa Code section 622.10 (1983), and (2) that production would constitute an impermissible invasion of the constitutional right of privacy of each affected patient. Because the district court correctly decided that the records must be produced, we annul the writ of certiorari.

 Under our civil contempt statute, no appeal lies from a judgment of contempt, but "the proceedings may, in proper cases, be taken to a higher court for revision by certiorari." Iowa Code § 665.11 (1983). Ordinarily review by certiorari is limited to questions of jurisdiction or illegality of the ruling of a trial court or other public official. *State v. District Court in and for Polk County*, 231 N.W.2d 1, 5 (Iowa 1975). When by certiorari we review a judgment of contempt, however, we also examine the evidence to ensure that proof of contempt is clear, satisfactory and convincing. *Bevers v. Kilburg*, 326 N.W.2d 902, 904 (Iowa 1982). Here the facts clearly establish that plaintiff willfully refused to obey the order for production of the medical records. After summarizing the background facts we will address the legal arguments which formed the basis for plaintiff's willful refusal.

The plaintiff Sherry Chidester is the custodian of medical records at the Cavallin Clinic which for several years has provided psychological services through its staff psychologists, social worker, and its present and former medical directors, Dr. Hector Cavallin and Dr. Belin Fernandez. The clinic serves both patients who arrange for private payment and medicaid patients who qualify for medical assistance which is paid directly to the clinic through the Iowa Department of Human Services. *See generally* Iowa Code ch. 249A (1983).

As part of an investigation into alleged fraudulent practices involving violations of the Iowa Administrative Rules pertaining to medicaid funds, the county attorney applied to the district court for a subpoena duces tecum to be issued to the plaintiff as medical records custodian of the clinic. The subpoena thereafter issued, requiring plaintiff to produce specifically-identified records kept by the clinic for the year 1982—appointment books, ledger cards and related records for thirteen named medicaid patients, and copies of the clinic's medicaid billings for those patients. Although the county attorney did not seek records pertaining directly to diagnosis or prognosis of the patients, the subpoenaed ledger cards contained coded diagnostic information on each patient.

The clinic's doctors moved to quash the subpoena, asserting that the records were privileged under Iowa Code section 622.10 and that disclosure would violate the constitutional right of privacy of each affected patient. At no time has the county attorney contended that these issues could only be raised by the patients, not by the clinic doctors; therefore we do not address that question of standing. After a plenary hearing on these issues, the district court denied the motion to quash and ordered plaintiff to comply with the subpoena. Plaintiff did not produce the records, her counsel's legal arguments for non-production at the contempt hearing were unavailing, and the trial court adjudged her to be in contempt.

I. *Should Iowa Code Section 622.10 Bar Disclosure?*

 Plaintiff first argues that Iowa Code section 622.10 constitutes a statutory bar to disclosure of privileged communications contained within the records identified in the subpoena duces tecum. Section 622.10 provides, in relevant part:

A practicing attorney, counselor, physician, surgeon, physician's assistant, mental health professional, or the stenographer or confidential clerk of any such person, who obtains information by reason of the person's employment, ...

shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

The trial court found that this section did not apply in this case because plaintiff could comply with the subpoena without "giving testimony," the only activity explicitly protected by the statute's wording. Plaintiff contends that such a literal interpretation of the statute should be rejected because it ignores and essentially undermines the purpose for the privilege—creation of an atmosphere of trust between the medical professional and the patient. She argues that mental and emotional problems can be treated effectively only if the privilege attaches at the commencement of the psychotherapist-patient relationship and thereafter totally insulates the relationship from public scrutiny. *See Newman v. Blom,* 249 Iowa 836, 843, 89 N.W.2d 349, 354–55 (1958) ("The policy of the statute is to provide for great freedom of disclosure by a patient to his physician, for the patient is often in no position to know what disclosures may or may not be necessary for his proper treatment."). She points out also that we have previously interpreted the words "giving testimony" in the statute quite expansively, holding that the phrase includes written documents as well as oral testimony. *See Newman v. Blom,* 249 Iowa at 844, 89 N.W.2d at 355.

Although we are inclined to interpret section 622.10 liberally to foster its worthwhile goals, we are not free to rewrite the section "under the guise of liberal construction." *State v. Bedel,* 193 N.W.2d 121, 124 (Iowa 1971). We have frequently noted that the privilege in section 622.10 is limited.

[Section 622.10] has a unique and limited purpose. Because it is in derogation of every person's duty to give evidence, it is subject to special restrictions. *See generally Lamberto v. Bown,* 326 N.W.2d 305, 306–07 (Iowa 1982).

*Head v. Colloton,* 331 N.W.2d 870, 875 (Iowa 1983); *see State v. Munro,* 295 N.W.2d 437, 443 (Iowa 1980) (section 622.10 applies only to testimonial use of privileged information and not to use for determining the most effective way to interrogate a person in police custody); *Noble v. United Benefit Co.,* 230 Iowa 471, 475, 297 N.W. 881, 884 (1941) (dictum) (Predecessor to § 622.10 "does not prohibit a physician from disclosing any confidential communications. It prohibits him from giving testimony."). The trial court properly held that section 622.10 did not provide plaintiff with a legal defense in the contempt proceeding, because the order directing plaintiff to produce the subpoenaed records did not require that she disclose privileged communications by the giving of testimony.

Plaintiff protests that this interpretation would require her to reveal indirectly what she is protected from revealing directly, a practice we disallowed in *Newman v. Blom,* 249 Iowa at 843, 89 N.W.2d at 354. Plaintiff reads too much into that decision. In *Newman,* we held that medical records that contained information gathered from a patient were to be considered "confidential communications" under section 622.10 because the records contained information which would be inadmissible at trial as oral testimony from the physician. *Newman* did not discuss the disclosure of confidences in a non-testimonial setting and therefore is inapposite.

■ The subpoena duces tecum in this case does not force the petitioner to testify "indirectly." A subpoena duces tecum issued under rule 5(6) is part of a county attorney's general investigatory power for use in lieu of a grand jury proceeding. *State v. Kelley,* 353 N.W.2d 845, 848 (Iowa 1984); *Brown v. Johnston,* 328 N.W.2d 510, 511 (Iowa 1983). Information obtained under this rule may not be used to perpetuate testimony for trial. *State v. Hamilton,* 309 N.W.2d 471, 478 (Iowa 1981). Moreover, documents produced in response to a county attorney's subpoena remain confidential unless and until a crim-

inal charge is filed, and the court may thereafter order such documents to remain confidential. Iowa R.Crim.P. 5(6).

Because we have found the statutory physician-patient privilege did not excuse plaintiff from complying with the subpoena issued pursuant to Iowa Rule of Criminal Procedure 5(6), we need not address the State's contention that the appointment books and ledgers contained no confidential communications within the meaning of section 622.10.

II. *Would Disclosure Violate the Patients' Constitutional Right of Privacy?*

Plaintiff contends that the trial court's orders compelling disclosure of medical records violated the affected patients' right of privacy guaranteed by the First and Fourteenth Amendments to the United States Constitution. She cites decisions of the United States Supreme Court which describe in general terms, and in a variety of contexts, the zones of privacy for which there may be constitutional protection. *See, e.g., Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 727, 35 L.Ed.2d 147, 176 (1973) (right of personal privacy in deciding on abortion); *Griswold v. Connecticut,* 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510, 514 (1965) (right of privacy in use of contraceptives).

In *Whalen v. Roe,* the Court summarized the import of these decisions concerning rights of privacy by stating:

The cases sometimes characterized as protecting "privacy" have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.

429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64, 73 (1977) (footnotes omitted). Plaintiff argues that both types of privacy interest apply to the facts in this case. She contends that the patients have an interest in preventing disclosure of their personal affairs, particularly the fact of consultation with a psychiatrist or psychologist. She contends also that if we allow such infor-

mation to be disclosed to the public, persons will be inhibited from deciding to obtain mental and emotional health care.

■ However broad the patients' constitutional privacy interest may be, that interest constitutes at most a qualified rather than an absolute privilege. The privacy interest must always be weighed against such public interests as the societal need for information, and a compelling need for information may override the privacy interest. *Roe v. Wade,* 410 U.S. at 154–55, 93 S.Ct. at 727–28, 35 L.Ed.2d at 177–78; *Brown v. Johnston,* 328 N.W.2d 510, 512 (Iowa 1983); *State v. Price,* 237 N.W.2d 813, 818 (Iowa 1976). We need not here decide the precise reach of the patients' constitutional privacy right. Whatever that reach, the privacy interest must be balanced against society's interest in securing information vital to the fair and effective administration of criminal justice. The State contends that there is a compelling societal interest in investigating alleged fraudulent medicaid practices, and that specific state interest has been recognized in a number of cases. *See, e.g., People v. Doe,* 107 Misc.2d 605, 607–08, 435 N.Y.S.2d 656, 658 (1981); *Doe v. Hynes,* 104 Misc.2d 398, 403, 428 N.Y.S.2d 810, 814 (1980). This is a specific application of the general principle that society has a strong interest in allowing official investigators of criminal activity broad authority to conduct thorough investigations. *See United States v. Calandra,* 414 U.S. 338, 343, 344, 94 S.Ct. 613, 618, 38 L.Ed.2d 561, 569 (1974); *Branzburg v. Hayes,* 408 U.S. 665, 667–68, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626, 643 (1972); *In re Zuniga,* 714 F.2d 632, 642 (6th Cir.1983); *Brown v. Johnston,* 328 N.W.2d at 511–12. *Cf. Whalen v. Roe,* 429 U.S. at 602, 97 S.Ct. at 878, 51 L.Ed.2d at 75 (interest of state in controlling dangerous drugs outweighs patients' right of privacy).

In weighing the patients' privacy interest against the State's interest in obtaining a thorough investigation, we are also mindful that the privacy interest is partially protected by Iowa Rule of Criminal Procedure 5(6). The records obtained pursuant to a

county attorney's subpoena have a confidential status before any criminal charge is filed and may thereafter be kept confidential by court order, in accordance with the wording of that rule.

We conclude that the privacy interest of the clinic's patients must yield to the State's interest in well-founded criminal charges and the fair administration of criminal justice. *See Brown v. Johnston,* 328 N.W.2d at 513. Consequently, the district court order compelling plaintiff to produce subpoenaed medical records did not violate constitutional rights of patients of the clinic.

We therefore vacate the writ of certiorari, anticipating that the district court will promptly set a date by which plaintiff Sherry Chidester must either purge herself of contempt by delivery of the subpoenaed records or be punished for her contempt.

WRIT ANNULLED.