WIGGINS, Justice.
In this appeal, we review a district court order and court of appeals decision allowing a criminal defendant to gain access to a victim’s privileged mental health records. The district court and the court of appeals allowed the defendant access without restriction. We now adopt a protocol that balances a patient’s right to privacy in his or her mental health records against a defendant’s right to present evidence to a jury that might influence the jury’s determination of guilt. Accordingly, we vacate the decision of the court of appeals, affirm in part and reverse in part the judgment of the district court, and remand the case for further proceedings consistent with this opinion.
I. Background Facts and Proceedings.
This case involves a domestic dispute *404 between Ross Cashen and Jane Doe.[1] As a result of the dispute, on April 18, 2007, the State charged Cashen with the offenses of domestic abuse assault, third offense, and willful injury, class “D” felonies.
On July 3 Cashen filed a notice that he intended to rely on the defense of self-defense. On July 25 Cashen asked the court to enter an order authorizing him to hire an expert to review and aid in the interpretation of Doe’s mental health records as well as to present expert testimony to the jury regarding Doe’s credibility and propensity for violence. The district court denied the motion, finding it was premature because the court had not made a determination as to whether the records would be admissible at trial.
Cashen then proceeded to depose Doe. In her deposition, Doe acknowledged she had been involved in past abusive relationships with other men. She also testified she had been diagnosed with posttraumatic stress disorder, anxiety, depression, and had been in counseling and therapy since she was fifteen years old. She indicated she had displayed impulsive and reactive behavior in the past and became easily frustrated when she was in her relationship with Cashen. Doe also said she was taking a prescription antidepressant. She said she was taking the medication because she was nervous about the safety and welfare of her boyfriend, who was serving in the armed services. She also believed Cashen was a very violent man, and she worried about retribution from him.
Cashen also employed a private investigator who acquired some of Doe’s mental health records from a medical office and a hospital. After the State learned Cashen had acquired these records, it filed a motion in limine to exclude the records, as well as other matters, from trial. The State also sought to preclude admission of Doe’s prior mental health history revealed in her deposition.
The district court denied the motion in limine. It found the mental health history of Doe, specifically her propensities for violence and explosive behavior, was relevant to Cashen’s defense of self-defense. It also determined the records could be relevant to Doe’s credibility as a witness to accurately observe and recall the events leading to the charges and may be helpful to impeach her at trial. The court continued the trial to allow Cashen the opportunity to secure an expert to review the records and testify, if necessary, on the issues of Doe’s propensity for violence and her credibility.
On November 29 Cashen filed two separate motions, the first to reconvene Doe’s deposition and the second to obtain Doe’s mental health records. On December 11 the court ordered Doe to execute a patient waiver form in favor of Cashen’s counsel and, upon receipt of the records, permit Cashen’s counsel to reconvene the deposition of Doe to explore those areas connected to the records.
The State responded by filing an application for discretionary review. We granted the application and transferred the case to the court of appeals. The only issue argued on appeal was whether the district court erred in allowing the disclosure of Doe’s mental health records.
The court of appeals affirmed the district court’s order in part and reversed in part. It found Cashen had demonstrated a compelling need for the mental health records and affirmed the decision of the district court ordering disclosure of the records and admission of expert testimony on the issues of Doe’s propensity for vio *405 lence and her credibility. It additionally found the district court had no authority to order the State to secure and produce the patient waiver of a witness, but failed to further address the procedure for the production of the records. We granted further review.
II. Standard of Review.
Ordinarily, we review discovery orders for an abuse of discretion. State v. Schuler, 774 N.W.2d 294, 297 (Iowa 2009). However, to the extent the issues in this case involve constitutional claims, our review is de novo. State v. Reyes, 744 N.W.2d 95, 99 (Iowa 2008). Because the issues in this case rest on constitutional claims involving Cashen’s due process right to present a defense, our review is de novo. See Pennsylvania v. Ritchie, 480 U.S. 39, 56, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40, 57 (1987) (holding a due process analysis applies in determining whether to disclose a child protective service agency’s privileged records for purposes of a defendant presenting a defense).
III. Analysis.
A. The State’s Claims. In State v. Heemstra, 721 N.W.2d 549, 563 (Iowa 2006), we allowed a defendant to obtain the medical records of a homicide victim to assist the defendant in presenting his defense. There, the defendant was facing a first-degree murder charge that carried a sentence of life in prison without the possibility of parole. Heemstra, 721 N.W.2d at 551, 563. In this appeal, the State argues this case is distinguishable from our decision in Heemstra because it “does not present any ‘unique facts’ warranting abrogation of the psychotherapist privilege and intrusion into the victim’s mental health records.” The only real difference between this case and Heemstra is the severity of the penalty. If convicted, Cashen can be deprived of his liberty and potentially sentenced to ten years in prison. See Iowa Code § 902.9(5) (2005) (stating a defendant’s conviction for a class “D” felony subjects the defendant to possible confinement for no more than five years). Regardless of the charge or the penalty, all defendants have a right to a fair trial. See generally Gentile v. State Bar of Nev., 501 U.S. 1030, 1075, 111 S.Ct. 2720, 2745, 115 L.Ed.2d 888, 923 (1991) (Rehnquist, C.J., dissenting in part) (“Few, if any, interests under the Constitution are more fundamental than the right to a fair trial.”). Thus, there is no reason to apply the law regarding the disclosure of privileged records differently based on the severity of a defendant’s sentence.
The State’s fallback position is that if the records are made available to the defendant’s attorney, the records should only be disclosed on a limited basis. We agree that if privileged records are to be made available in a criminal proceeding, a certain protocol must be followed to balance the patient’s right to privacy with the defendant’s right to present evidence to a jury that might influence the jury’s determination of guilt. Today, we set forth the proper protocol to be used by a court to determine when and how a defendant’s attorney can gain access to a victim’s privileged mental health records.
B. Prior Case Law. We have previously applied a balancing test to determine if a party to a proceeding is entitled to review the confidential medical records of a nonparty. Chidester v. Needles, 353 N.W.2d 849, 853 (Iowa 1984). The first decision to adopt and apply this test was Chidester. Id. In Chidester, the county attorney sought thirteen patients’ medical records in connection with his investigation into Medicaid fraud. Id. at 851. The first issue we considered was the nature of the patients’ right in keeping the records pri *406 vate. Id. at 851-53. We rejected the patients’ claim that Iowa Code section 622.10, the statutory physician-patient privilege, protected the records from the county attorney’s subpoena because section 622.10 only protects the giving of testimony. Id. at 852-53. Instead, we determined the patients’ constitutional right to privacy protected the patients’ interests in avoiding disclosure of personal matters and maintaining independence when making certain kinds of important decisions. Id. at 853.
Although we recognized the patients had a constitutional right to privacy in their medical records, we acknowledged this privilege was not absolute, but qualified. Id. Thus, we adopted a balancing test and stated, “The privacy interest must always be weighed against such public interests as the societal need for information, and a compelling need for information may override the privacy interest.” Id. In weighing the interests, we said, “[Sjociety has a strong interest in allowing official investigators of criminal activity broad authority to conduct thorough investigations.” Id. We also declared, “[T]he privacy interest must be balanced against society’s interest in securing information vital to the fair and effective administration of criminal justice.” Id. (emphasis added). We then concluded the patients’ privacy interest in their records yielded to “the State’s interest in well-founded criminal charges and the fair administration of criminal justice” and allowed the county attorney to subpoena the records. Id. at 854.
The next case to discuss the balancing test was McMaster v. Iowa Board of Psychology Examiners, 509 N.W.2d 754, 759 (Iowa 1993). There, the board of psychology examiners subpoenaed a patient’s records from a psychologist who was not under investigation. McMaster, 509 N.W.2d at 755. The patient filed a petition to quash the subpoena. Id. at 756. In concluding the patient’s constitutional privacy interest in her records is not absolute, we applied the balancing test. Id. at 759.
In applying the balancing test, we found the board’s public interest was its statutory duty to police mental health professionals. Id. After recognizing this public interest, we adopted a protocol for determining whether a patient’s privacy interest in his or her mental health records must yield to a competing interest of the State. Id. at 759-60. The protocol first required the party seeking access to the records must “make a minimal showing that the complaint reasonably justifies the issuance of a subpoena in furtherance of the investigation.” Id. at 759. Second, the party seeking access to the records must show the records are necessary as evidence in the disciplinary proceedings. Id. This requirement can be satisfied by an in camera review of the records by the district court. Id. Third, the party seeking access to the records must notify the patient and request a waiver from the patient prior to issuing the subpoena. Id. at 760. Fourth, the party seeking access to the records should establish the existence of adequate safeguards to avoid unauthorized disclosure. Id. Last, the patient’s privacy interest in the records will yield to a competing interest of the State only if there is an articulated public policy, recognized public interest, or an express statutory mandate “ ‘militating toward access.’ ” Id. (quoting United States v. Westinghouse Elec. Corp., 638 F.2d 570, 578 (3d Cir.1980)).
Our most recent case to apply the balancing test was Heemstra. In Heemstra, we allowed “limited disclosure” of the victim’s medical records based on the unique facts presented in the case. Heemstra, 721 N.W.2d at 563. We held “the records [should] be made available to defense and *407 prosecution counsel ... under a protective order prohibiting any further dissemination without court order.” Id.
C. Third Party’s Right to Privacy in her Mental Health Records. We recognize a patient’s right to privacy in his or her mental health records because
“[psychotherapy probes the core of the patient’s personality. The patient’s most intimate thoughts and emotions are exposed during the course of the treatment. The psychiatric patient confides [in his therapist] more utterly than anyone else in the world.... [H]e lays bare his entire self, his dreams, his fantasies, his sin, and his shame. The patient’s innermost thoughts may be so frightening, embarrassing, shameful or morbid that the patient in therapy will struggle to remain sick, rather than to reveal those thoughts even to himself. The possibility that the psychotherapist could be compelled to reveal those communications to anyone ... can deter persons from seeking needed treatment and destroy treatment in progress.”
McMaster, 509 N.W.2d at 758 (quoting Haw. Psychiatric Soc’y v. Ariyoshi, 481 F.Supp. 1028, 1088 (D.Haw.1979) (citations omitted)). Accordingly, these reasons are important in our application of the balancing test.
D. Public Interest in Allowing the Defendant to Obtain the Records. Excluding evidence from a criminal trial for some purpose other than enhancing the truth-seeking process of the proceeding increases the danger of convicting an innocent person. Under the United States Constitution, a criminal defendant has a due process right to present evidence to a jury that might influence the jury’s determination of guilt. Ritchie, 480 U.S. at 56, 107 S.Ct. at 1000-01, 94 L.Ed.2d at 56-57. The Supreme Court has also said that “disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice.” Dennis v. United States, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 978, 984 (1966). Thus, a defendant’s right to produce evidence that is relevant to his or her innocence is an important public interest that we must consider in applying the balancing test.
E. The Proper Protocol for Requesting the Privileged Mental Health Records of a Victim. The purpose of providing a defendant with the privileged records of a victim is to lessen the chance of wrongfully convicting an innocent person. Society shares this interest. In fact, the Federal and Iowa Constitutions include numerous safeguards to prevent the wrongful conviction of the innocent. See, e.g., U.S. Const, amend. VI (guaranteeing an accused the right to a speedy and public trial by an impartial jury, to be informed of the accusations against him or her, to confront witnesses, to have compulsory process, and to have the assistance of counsel in a criminal prosecution); Iowa Const, art. I, § 10 (same). On the other hand, the interest in preventing wrongful convictions does not justify giving defendants access to all of a victim’s privileged records from the time of birth.
We continue to adhere to a balancing test, and now take the opportunity to articulate a standard that judges can consistently apply to identify those circumstances when the defendant’s right to a fair trial outweighs the victim’s right to privacy. This standard allows a defendant to obtain the records necessary to put forth evidence tending to show the defendant’s innocence, but does not permit the defendant to go on a fishing expedition into a victim’s privileged records. Because of the importance of the public interest in not convicting an innocent person of a *408 crime, any standard should resolve doubts in favor of disclosure.
In McMaster, we developed a protocol that balanced the interest of the State against the privacy interest of the patient when an agency sought to obtain the patient’s privileged mental health records. McMaster, 509 N.W.2d at 759-60. Today, we formulate a similar protocol when a criminal defendant, who is represented by counsel, requests the privileged mental health records of a victim.[2] The protocol we adopt today strikes the proper balance between a victim’s right to privacy in his or her mental health records and a defendant’s right to produce evidence that is relevant to his or her innocence.
First, we want to emphasize that a defendant is not entitled to engage in a fishing expedition when seeking a victim’s mental health records. Before a subpoena may issue for a victim’s privileged records, the defendant must make a showing to the court that the defendant has a reasonable basis to believe the records are likely to contain exculpatory evidence tending to create a reasonable doubt as to the defendant’s guilt. Ritchie, 480 U.S. at 58 n. 15, 107 S.Ct. at 1002 n. 15, 94 L.Ed.2d at 58 n. 15. In doing so, the defendant need not show the records actually contain information for establishing the unreliability of a charge or witness. Commonwealth v. Bishop, 416 Mass. 169, 617 N.E.2d 990, 996-97 (1993), abrogated by Commonwealth v. Dwyer, 448 Mass. 122, 859 N.E.2d 400, 414, 417-19 (2006). A defendant need only advance some good faith factual basis indicating how the records are relevant to the defendant’s innocence. Id. Thus, to begin this process, a defendant’s counsel must file a motion with the court demonstrating a good faith factual basis that the records sought contain evidence relevant to the defendant’s innocence. The motion shall be marked confidential, filed under seal, and set forth specific facts establishing a reasonable probability the records sought contain exculpatory evidence tending to create a reasonable doubt as to the defendant’s guilt. The motion shall also request the court issue a subpoena requiring the custodian of the records to produce the records sought by the defendant. Defendants or their attorneys shall not subpoena a victim’s privileged records without a court order.
Second, the county attorney shall notify the victim that the defendant has made a request for the victim’s privileged records. After conferring with the victim, the county attorney shall provide the court with an affidavit signed by the victim stating the victim either consents to or opposes the disclosure of the records. If the victim consents to the disclosure, the court shall issue a subpoena for the records to be produced under seal to the court. If the victim opposes the disclosure, the court shall hold a hearing to determine if a reasonable probability exists that the records contain exculpatory evidence tending to create a reasonable doubt as to the defendant’s guilt. If the court determines a reasonable probability exists that the records contain such evidence, the court shall issue a subpoena for the records to be produced under seal to the court.
Before issuing the subpoena, the court shall enter a protective order containing stringent nondisclosure provisions. The protective order shall prohibit any attorney, county attorney, or third party who is *409 allowed to inspect or review the records under this protocol from copying, disclosing, or disseminating the information contained in the records to any person, including the defendant, unless otherwise authorized by this protocol or the court. In addition, the Health Insurance Portability and Accountability Act of 1996 (HI-PAA) requires the Secretary of the Department of Health and Human Services to issue regulations to insure the privacy of health care records. 42 U.S.C. § 1320d-2(d)(2) (2003). To comply with the privacy and security rules enacted by the Secretary, the protective order shall also contain provisions: (1) prohibiting the parties from using or disclosing the records or the information contained in the records for any purpose other than the criminal proceeding for which the records were sought, and (2) requiring an attorney, county attorney, or third party who is allowed to inspect or review the records under this protocol to destroy the records (including all copies made) at the end of the proceeding. 45 C.F.R. § 164.512(e)(l)(ii)(B), ,512(e)(l)(v) (2010). The subpoena shall contain language stating that prior to the court issuing the subpoena, the court has entered a protective order complying with the requirements of HIPAA’s privacy and security rules. A copy of the protective order shall be served with the subpoena. Id. § 164.512(e)(l)(ii)(B), .512(e)(l)(iv).
Third, if the records are produced, the attorney for the defendant who obtained the subpoena shall have the right to inspect the records at the courthouse. An in camera review of the records by the court is insufficient. Only the attorneys representing the parties know what they are looking for in the records. The court cannot foresee what may or may not be important to the defendant. Heemstra, 721 N.W.2d at 563; see also Dwyer, 859 N.E.2d at 418 (“Despite their best intentions and dedication, trial judges examining records before a trial lack complete information about the facts of a case or a defense ... and are all too often unable to recognize the significance, or insignificance, of a particular document to a defense.”).
Fourth, after the attorney for the defendant has identified the records he or she believes contain exculpatory evidence, the attorney shall notify the county attorney and the court of the specific records the defendant desires and ask that the matter be set for hearing. Prior to the hearing, the county attorney may review the designated records at the courthouse. If the county attorney reviews the records, he or she is subject to the protective order entered by the court.
Fifth, the court shall hold a hearing to determine if the designated records contain exculpatory evidence. The court shall close the hearing to the public to protect the victim’s privacy. The court shall give notice of the hearing to the defendant’s attorney and the county attorney. If the court determines the designated records contain such evidence, the court shall provide a copy of any such records to the defendant’s attorney and the county attorney. Before providing these records to counsel, the court shall order that all non-exculpatory matters in the records provided be redacted prior to the records being removed from the courthouse. In order to protect the privacy rights of the victim, these records will continue to be subject to the protective order entered by the court. Before either attorney can disclose the records to a third party, including potential expert witnesses, the attorney must obtain an order from the court allowing such disclosure and requiring the person to whom the records are disclosed to be bound to the same nondisclosure *410 provisions imposed on the attorneys. A copy of the protective order shall be given to the third party when the party receives copies of the records.
The protocol we have outlined for discovery purposes does not necessarily mean the victim’s mental health records are admissible at trial. Whether the records meet the requirements for admission under our rules of evidence is a separate determination that the court will make at trial or in ruling on a motion in limine. If the court ultimately decides the records are admissible, the court shall consider alternatives to the introduction of the records as proffered. These alternatives may include stipulations by the parties or the introduction of redacted portions of the records.
All records produced under seal to the court pursuant to a subpoena shall be preserved for appeal purposes. After completion of the appeal, all persons who have copies of the records shall destroy their copies and certify to the court that the records in their possession have been destroyed.
In formulating this protocol, we have considered whether a defendant should be required to make a showing that the information sought in the records could not be obtained from another source, such as the victim’s testimony, before the defendant is allowed to seek production of the victim’s mental health records. We reject such a requirement because we do not believe a patient’s rendition of his or her medical condition and treatment is necessarily reliable. For example, without examining Doe’s records, Cashen cannot be sure the information provided in Doe’s deposition testimony accurately reflects her true mental health condition. Sometimes individuals are less than candid concerning their condition when talking to others. In other instances, individuals may not fully understand their condition, notwithstanding their health care providers’ efforts to explain it to them. Finally, such records often contain information not given to a patient or information forgotten by a patient. The only way to assure that Cashen has adequate and accurate information to defend properly against the criminal charges is to give him access to those portions of Doe’s records that are relevant to Cashen’s innocence. By using the protocol outlined above, the invasion of Doe’s right to privacy in her mental health records is minimized.
F. Application of the Protocol. In her deposition, Doe admitted punching the defendant. On two prior instances, she has been charged with domestic abuse against her ex-husband. She admits to having posttraumatic stress disorder for which she has sought counseling. She also admitted to being frustrated easily and having difficulty controlling impulsive behavior. Based on this testimony, the district court found the mental health history of Doe, relating to her propensities for violence and explosive behavior, was relevant to Cashen’s defense of self-defense and to Doe’s credibility as a witness. This evidence is exculpatory because it tends to create a reasonable doubt as to Cashen’s guilt.
We agree with the district court that Doe’s deposition testimony satisfies Cash-en’s requirement to establish a reasonable probability exists that the records contain exculpatory evidence. On remand, the court shall issue a subpoena for the records to be produced under seal to the court. Thereafter, the court and the parties shall comply with the remaining requirements of the protocol.
IV. Disposition.
We affirm the district court decision to the extent it allowed Cashen’s attorney to *411 inspect the mental health records of Doe. We reverse that part of the decision requiring Doe to execute a patient’s waiver in favor of Cashen’s attorney. Therefore, we vacate the decision of the court of appeals and remand the case to the district court to follow the protocol contained in this opinion pertaining to the disclosure of a victim’s privileged records.
DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
Ml justices concur except CADY, J., who dissents.

. We have changed the name of the victim to protect her privacy.

. We express no opinion as to the applicability of this protocol when the defendant is self-represented.