# IN THE COURT OF APPEALS OF IOWA

No. 13-0828
Filed October 1, 2014

**STATE OF IOWA,**
   Plaintiff-Appellee,

**vs.**

**ROBERT GERALD HOOSE,**
   Defendant-Appellant.
_____

Appeal from the Iowa District Court for Mills County, Timothy O'Grady, Judge.

Defendant appeals from his convictions and sentence for sexual abuse in the third degree and three counts of sexual abuse in the second degree.
**AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Eric Hansen, County Attorney, and Kate Walling, Student Legal Intern, for appellee.

Heard by Danilson, C.J., and Vogel and Bower, JJ.

**DANILSON, C.J.**

Robert Hoose appeals from his convictions and sentence for sexual abuse in the third degree, in violation of Iowa Code sections 709.1 and 709.4(b)(2), and three counts of sexual abuse in the second degree, in violation of Iowa Code sections 709.1 and 709.3(2).[1] He contends the district court erred in denying his request to dismiss new charges brought against him nearly two years after his initial arrest, in violation of the speedy indictment rule contained in Iowa Rule of Criminal Procedure 2.33(2)(a). He also contends trial counsel was ineffective for failing to object to expert testimony presented by the State. Hoose maintains the court erred in two different evidentiary rulings: (1) in finding Hoose failed to demonstrate in good faith a reasonable probability that D.H.'s medical and mental health records contained exculpatory information and was not available from any other source, and (2) in holding statements relating to past sexual abuse allegations made by D.B. were not admissible because Hoose did not establish by a preponderance of the evidence that the statements were false.

It is undisputed Hoose was formally arrested on May 12, 2010, and he was aware of the charges he was being arrested for, so the reasonable-person test is not applicable here. Because the second trial information alleges offenses occurring on different dates than the original charges levied, they are not the same, and the speedy indictment rule was not violated. Additionally, we find Hoose failed to meet the threshold requirement of a "reasonable probability that

---

[1] According to the sentencing order entered by the district court on May 15, 2013, the date of the offense for sexual abuse in the third degree was between October 3, 2008 and May 3, 2010. The date of each of the three offenses for sexual abuse in the second degree occurred between October 2006 and September 2008.

the information sought is likely to contain exculpatory information," and there is no error in the trial court's refusal to conduct a second in camera review of D.H.'s mental health and medical records. Also, because Hoose failed to show by a preponderance of the evidence that prior allegations made by D.H. were false, the claims are protected by the rape shield law, and the district court did not abuse its discretion in finding they were inadmissible at trial. Finally, we preserve Hoose's claim of ineffective assistance for possible postconviction-relief proceedings, and we affirm.

**I. Background Facts and Proceedings.**

Hoose is the father of D.H., born in October 1996. On May 4, 2010, Hoose and his wife, Crystal, were out with friends while D.H., her sister, and her two half-siblings were at the family home. After Hoose and Crystal got home, Crystal went to the bathroom to shower, and Hoose went to D.H.'s room. According to D.H., Hoose came into her room and ordered her to take her clothes off. He placed her on her hands and knees, pulled down his shorts, and got behind her. At that time, Crystal walked into the room and screamed at Hoose, asking him what he was doing. D.H. ran to the basement. After some time, Crystal and D.H. left the house to talk. D.H. told Crystal that Hoose had been sexually abusing her for the previous five years.

The next day, D.H. reported the sexual abuse to the police. D.H. was interviewed at Project Harmony, a child protection center, on May 11, 2010. During the interview, D.H. provided detailed statements alleging Hoose had sexually abused her for the previous five years. The allegations included oral, vaginal, and anal sex.

On May 12, 2010, the State filed three complaints under case number FECR0945719 charging Hoose with sex abuse in the third degree, lascivious acts with a child, and incest. The facts listed in support of the charges were identical on each complaint. They stated:

> On 05-05-10, a juvenile female reported that she had been sexually assaulted by father Robert Hoose. The female reported that on 05-04-10 her father came into her bedroom after Mr. Hoose and his wife Crystal had been out drinking. Mr. Hoose told the juvenile female to remove her pants. The juvenile female was made to arch her back with her butt in the air as Mr. Hoose performed anal sex on the juvenile female. Crystal Hoose came into the room and wanted to know what was happening. Juvenile female spent the night at the neighbor's house. Juvenile female was interviewed at Project Harmony on 05-11-10. Juvenile female stated the sex abuse had been going on for five years and has included vaginal, anal, and oral sex. Juvenile female had also been forced to perform oral sex on Mr. Hoose.

The same day the complaints were filed, an arrest warrant was obtained, and Hoose was arrested pursuant to the arrest warrant.

On May 24, 2010, the State filed a trial information with minutes of testimony, charging the defendant with the same crimes. Four of the five witnesses[2] listed in the minutes of testimony were prepared to testify in-depth about the allegations of abuse beginning when D.H. was eight years old.

Over two years later, on June 26, 2012, the State filed a motion to amend the trial information and charges against Hoose. Hoose resisted the motion to amend the trial information, alleging it violated Iowa Rule of Criminal Procedure 2.4(8).

---

[2] The fifth witness would testify regarding the chain of evidence involving a video made of the interview of D.H. regarding her allegations of sexual abuse.

Apparently, the motion to amend was never pursued further as on July 9, 2012, the State filed a new trial information and arrest warrant for Hoose under case number FECR046498. Hoose was charged with three counts of sexual abuse in the second degree and one count of sexual abuse in the third degree. The minutes of testimony included four of the five witnesses from the previous minutes of testimony, as well as others.

On July 13, 2012, the State filed a motion to consolidate the two cases. On July 26, 2012, Hoose filed a motion to dismiss the second case for violation of Iowa Rule of Criminal Procedure 2.33(2)(a), also known as the speedy indictment rule. The district court granted the State's motion to consolidate and denied Hoose's motion to dismiss, finding the second trial information charged different crimes relating to different occurrences of sex abuse that Hoose was not arrested for on May 12, 2010.

On October 31, 2012, the State again amended the trial information. Under the consolidated case number FECR045719, the amended trial information listed the charges against Hoose as two counts of sexual abuse in the third degree and three counts of sexual abuse in the second degree.

The State filed a final amended trial information April 1, 2013, removing the count of sexual abuse in the third degree involving the May 4, 2010 incident. The remaining charges involved dates between October 2004 and September 2008.

The matter proceeded to jury trial on April 2, 2013. The jury returned a guilty verdict on each of the four charges on April 5, 2013. During the trial, the State called Dr. Anna Salter, a psychologist who specializes in sexual abuse and

violence, to testify as an expert on child sexual abuse. Relying on various published studies and journals, Salter testified about percentages and generalities concerning children who are abused. She also testified about specific statements made to her by victims and perpetrators during her practice. Hoose's attorney did not object to any of the statements. Hoose now contends his attorney was ineffective for failing to object to this testimony.

Hoose was sentenced on May 15, 2013. The district court sentenced him to a term of incarceration not to exceed twenty-five years for each of the sexual-abuse-in-the-second-degree convictions and a term of incarceration not to exceed ten years for the sexual-abuse-in-the-third-degree conviction. Each term was set to run consecutive to each other, for a maximum term of incarceration not to exceed eighty-five years.

Hoose appeals.

**II. Standard of Review.**

"We review a district court's decision regarding a motion to dismiss for lack of speedy indictment for correction of errors at law." *State v. Wing*, 791 N.W.2d 243, 246 (Iowa 2010).

A defendant may raise an ineffective-assistance claim on direct appeal if he has reasonable grounds to believe the record is adequate for us to address the claim on direct appeal. *State v. Straw,* 709 N.W.2d 128, 133 (Iowa 2006). If we determine the record is adequate, we may decide the claim. *Id.* We review claims of ineffective assistance of counsel de novo. *Id.*

We review discovery rulings challenged on constitutional grounds de novo. *State v. Cashen*, 789 N.W.2d 400, 405 (Iowa 2010) ("Because the issues

in this case rest on constitutional claims involving [the defendant's] due process right to present a defense, our review is de novo.").

We review the district court's evidentiary rulings for abuse of discretion. *State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). A district court abuses its discretion when its decision "rests on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Rodriguez*, 636 N.W.2d 234, 239 (Iowa 2001).

## III. Discussion.

### A. Speedy Indictment.

Hoose maintains his right to speedy indictment was violated when the State filed a new trial information under a new case number on July 9, 2012, adding an additional count of sex abuse in the third degree and three counts of sex abuse in the second degree.

Both the federal and state constitutions guarantee a right to a speedy trial. *See* U.S. Const. amend. XI; Iowa Const art. I, § 10. "Iowa's speedy indictment rule ensures the enforcement of the United States and Iowa Constitutions' speedy trial guarantees, which assure the prompt administration of justice while allowing an accused to timely prepare and present his or her defense." *State v. Utter*, 803 N.W.2d 647, 652 (Iowa 2011). Iowa's speedy indictment rule is codified in Iowa Rule of Criminal Procedure 2.33(2)(a), which provides, "When an adult is arrest for the commission of a public offense . . . and an indictment is not found against the defendant within 45 days, the court must order the prosecution to be dismissed, unless good cause to the contrary is shown or the defendant waives the defendant's right thereto." The term indictment, as used in the rule,

includes a trial information. Iowa R. Crim. P. 2.5(5); *see also State v. Schuessler*, 561 N.W.2d 40, 41 (Iowa 1997).

"The rules are intended to relieve an accused person of the anxiety created by a suspended prosecution and afford reasonably prompt administration of justice." *State v. Miller*, 818 N.W.2d 267, 271 (Iowa Ct. App. 2012). The rule also aims "to prevent the harm that arises from the possible impairment of the accused's defense due to diminished memories and loss of exculpatory evidence." *Wing*, 791 N.W.2d at 247.

However, the application of the rule is not without restrictions. The speedy indictment mandate is restricted "to the offense or offenses for which the defendant was arrested, and does not extend to a different offense not charged in the complaint related to the arrest." *State v. Edwards*, 571 N.W.2d 497, 499 (Iowa Ct. App. 1997). "There is nothing to suggest it extends to the commission of an offense which has not resulted in an arrest." *Id.* at 499–500. Additionally, "our existing speedy-indictment precedents do not require law enforcement to make an arrest based on every crime for which they possess probable cause." *State v. Miller*, 818 N.W.2d 267, 277 (Iowa Ct. App. 2012).

We find it necessary to first address the district court's order denying Hoose's motion to dismiss related to the speedy indictment rule. The district court relied upon *Wing*, 791 N.W.2d at 249, and *Miller*, 818 N.W.2d at 271–74. We conclude the test announced in those cases is inapplicable to the facts at hand. Both *Wing* and *Miller* involve defendants who were arrested but never informed they were under arrest, as required by Iowa Code section 804.14. In *Wing*, our supreme court stated:

> When an arresting officer does not follow the protocol for arrest outlined in section 804.14 and does not provide any explicit statements indicating that he or she is or is not attempting to effect an arrest, we think the soundest approach is to determine whether a reasonable person in the defendant's position would have believed an arrest occurred, including whether the arresting officer manifested a purpose to arrest.

791 N.W.2d at 249. In *Miller*, the defendant was not informed he was under arrest, or what charge was being filed against him. 818 N.W.2d at 269–70. Our court was required to consider how *Wing* applied to a situation where the law enforcement officer "arguably had probable cause to place the defendant under arrest for more than one offense." *Miller*, 818 N.W.2d at 268. Because Miller was not informed why he was arrested, we extended the *Wing* analysis by stating the court should look at what a reasonable person would think they are being arrested for to determine if a speedy indictment violation occurred. *Id.* at 272–73.

Here, the officer did inform Hoose of the arrest and even read the complaint and affidavit to him. Accordingly, the "reasonable person in the defendant's position" test is not properly applied to these facts.

On appeal, Hoose contends the facts in *State v. White*, No. 09-1099, 2003 WL 1786543 (Iowa Ct. App. April 4, 2003), are more akin to the facts at hand. In *White*, the defendant was charged by trial information with attempted murder for firing a gun on August 17, 1998. 2003 WL 1786543 at *2. After the speedy-indictment time period had expired, the State filed a second trial information alleging two counts arising out of the same incident—a second count of attempted murder and willful injury. *Id.* The second count of attempted murder was premised upon a second shot fired, which had been recited in the minutes of testimony to the first trial information. *Id.* Our court concluded the second trial

information was not based upon any new facts not existing in the minutes of testimony of the first trial information and concluded White's right to speedy indictment was violated. *Id.* at *5. Hoose relies on *White* because the facts set forth in his complaint state, in part, "Juvenile female stated the sex abuse had been going on for five years and has included vaginal, anal and oral sex. Juvenile female has also been forced to perform oral sex on Mr. Hoose." Hoose argues, similar to *White*, that the second trial information was not based on any new facts as the complaint set forth facts that could have supported the later-filed charges.

Before *White*, our supreme court concluded that although the speedy indictment time period begins when the defendant is arrested, it does not extend to different offenses that have not resulted in arrest. *See State v. Dennison*, 571 N.W.2d 492, 497 (Iowa 1997) (where defendant was properly arrested for driving while revoked and open container and subsequent filing of OWI charge beyond the forty-five-day time period did not violate the speedy indictment rule). After *White* was decided, our supreme court has also clarified that "the State may still bring charges involving other offenses, which arise from the same incident or episode as the previously charged offense." *State v. Utter*, 803 N.W.2d 647, 654 (Iowa 2011). The State may not, however, charge two offenses if they are the same offense for purposes of the speedy indictment rule. *Id.* In *Utter*, the court stated, "For purposes of the speedy indictment rule, two offenses are the same if they are in substance the same, or of the same nature, or same species, so that the evidence which proves one would prove the other." *Id.* (internal quotation

omitted).  Accordingly, because the law has evolved since *White*, the principles espoused in *White* do not aid Hoose.

Here, it is undisputed that Hoose was formally arrested on May 12, 2010, for sex abuse in the third degree, lascivious acts with a child, and incest.  Each of the three complaints clearly limits the charges to an event occurring "on or about the 4th day of May, 2010."  The State formally charged Hoose in the first trial information with each of the three crimes on May 24, 2010, well within the forty-five-day requirement.  The first trial information (FECR045719) charged the same three offenses listed in the complaints all to have occurred "on or about May 4, 2010."  The second trial information (FECR046498) filed July 9, 2012, charged four counts: three counts of sexual abuse in the second degree and one count of sexual abuse in the third degree.  The three counts of sexual abuse in the degree were all alleged to have occurred between October 2004 and September 2008.  The charge of sexual abuse in the third degree was alleged to have occurred between October 3, 2008 and May 3, 2010.  Because the second trial information alleges offenses occurring on different dates than the original charges levied, they are not the same.  The evidence to prove one offense does not prove any other offense, particularly as it relates to sexual abuse where the age of the victim is consequential to the degree of sexual abuse.  *See* Iowa Code §§ 709.3, 709.4.  Accordingly, we conclude there was no speedy trial violation.[3]

---

[3] In the consolidated trial information filed October 31, 2012, two of the original charges were dropped—lascivious acts with a child and incest.

**B. Ineffective Assistance.**

Hoose also contends he received ineffective assistance from trial counsel. He maintains counsel breached an essential duty by failing to object to expert testimony as inadmissible hearsay and, as a result, he suffered prejudice.

We generally preserve ineffective-assistance-of-counsel claims for postconviction relief proceedings. *Utter*, 803 N.W.2d at 651.[4] "Only in rare cases will the trial record alone be sufficient to resolve the claim on direct appeal." *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006). We prefer to reserve such claims for development of the record and to allow trial counsel to defend against the charge. *Id.* If the record is inadequate to address the claim on direct appeal, we must preserve the claim for a postconviction-relief proceeding, regardless of the potential viability of the claim. *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010).

Hoose contends some of Dr. Salter's expert testimony was inadmissible hearsay and lacked a sufficient foundation. He contends it was similar to the expert testimony that was challenged in *State v. Neiderbach*, 837 N.W.2d 180, 205-207 (Iowa 2013), as improperly admitted. Specifically, Hoose contends his attorney was ineffective for failing to object to journal facts and data recited by Dr. Salter because Dr. Salter did not testify that such facts and data were typically relied upon in the field of her expertise. Further, Hoose argues that his attorney should have objected to Dr. Salter's testimony about statements from

---

[4] *See also* Iowa Code § 814.7(3), which provides, "If an ineffective assistance of counsel claim is raised on direct appeal from the criminal proceedings, the court may decide the record is adequate to decide the claim or may choose to preserve the claim for determination under chapter 822."

other victims and additionally, to what the supreme court in *Neiderbach* described as "case histories with anecdotal confessions." 837 N.W.2d at 206.

We acknowledge the similarity in the expert testimony in Hoose's trial and in *Neiderbach*. Ultimately, the court in *Neiderbach* concluded there was no prejudice relative to the lack of foundation as the evidence was also admitted through another expert. 837 N.W.2d at 205–207. The court also found any error in admitting the case histories and anecdotal confessions was harmless. *Id.*

We also acknowledge the principle espoused in *Neiderbach*, "[R]ule 5.703 is intended to give experts appropriate latitude to conduct their work, not to enable parties to shoehorn otherwise admissible evidence into the case." 837 N.W.2d at 205. However, unlike *Neiderbach*, no objections were levied at trial, and the issue presents itself in this action as a ground for ineffective assistance of counsel.

The record on this appeal is inadequate to address Hoose's claims. We do not know the reasons counsel may have had for not objecting to the testimony of Dr. Salter. Defense counsel may have reached an agreement prior to trial regarding the extent of Dr. Salter's testimony as suggested by the State. Defense counsel may have also made a strategic decision to simply discredit Dr. Salter's testimony by vigorous cross-examination, and thereby discredit the State's entire case. Defense counsel should be allowed to respond to the charge of ineffective assistance of counsel. *State v. Brubaker*, 805 N.W.2d 164, 170 (Iowa 2013). "Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned." *State v. Bentley*, 757 N.W. 2d 257, 264 (Iowa 2008). Because the record here is inadequate, the issue of whether trial

counsel was ineffective is preserved for possible postconviction-relief proceedings.

### C. Medical and Mental Health Records.

Hoose maintains the district court erred in failing to conduct a second in camera review of D.H.'s medical and mental health records, pursuant to Iowa Code section 622.10.[5]

The confidentiality privilege in a person's medical and mental health records is absolute with regard to a criminal action. Iowa Code § 622.10(4)(a). Hoose had the right to seek access to the information by filing a motion "demonstrating in good faith a reasonable probability that the information sought is likely to contain exculpatory information that is not available from any other source." *Id.* § 622.10(4)(a)(2)(a). If he made a "showing of a reasonable probability that the privileged records sought may likely contain exculpatory information that is not available from any other source, the court shall conduct an in camera review of such records." *Id.* § 622.10(4)(a)(2)(b). The term "reasonable probability" means "a substantial, not just conceivable, likelihood." *State v. Thompson*, 836 N.W.2d 470, 484 (Iowa 2013) (citations and internal quotation marks omitted). And the term "likely" means "probable or reasonably to be expected." *Id.* (citations and internal quotation marks omitted).

---

[5] Hoose originally requested access to D.H.'s records in 2011. On April 28, 2011, the district court determined Hoose had shown there was a reasonable probability D.H.'s mental health records contained exculpatory evidence. Following an in camera review in June 2011, the court found there was no exculpatory evidence in the records.

At a pre-trial hearing on January 13, 2013, Hoose requested access to any medical and mental health records produced after the June 2011 in camera review by the court. It is the denial of this request that Hoose appeals.

Here, the district court found that Hoose failed to demonstrate in good faith a reasonable probability that information in D.H.'s medical and mental health records contained exculpatory information that was not available from another source. At the hearing on the motion, Hoose indicated he believed continued access to D.H.'s medical and mental health records would allow him to impeach D.H.'s credibility because she may have made false accusations "against several new people." In response, the State conceded that D.H. had made additional allegations of sexual abuse since the arrest of Hoose. However, the State also confirmed that one of the persons D.H. accused was serving time in prison for the crime and a second individual was part of an ongoing investigation by police officers. Hoose also stated he "wanted the mental health records" to see "whether [D.H.] may have told her counselor something different than she told the officers." Hoose maintains these facts are similar to those in *State v. Neiderbach*, 837 N.W.2d 180, 197 (Iowa 2013), where our supreme court held that the district court erred in failing to conduct an in camera inspection of the co-defendant's mental health records. As is true here, in *Neiderbach*, a "central issue in the case" was the credibility of the person whose records were at issue. *Id.* However, we believe that is where the similarities end. In *Neiderbach*, the defendant was able to provide examples of previous "concocted" stories, inconsistent statements, and strange behavior of his co-defendant who had reached a plea agreement with the State in exchange for her testimony. *Id.*

Upon our de novo review, we conclude Hoose's claims that D.H. had made allegations of sexual abuse against others, at least one of which resulted in incarceration, and "*may have* told her counselor something different than she told

the officers," does not meet the threshold requirement of a "reasonable probability that the information sought is likely to contain exculpatory information. (Emphasis added). In *Neiderbach,* the court found admissions to a mental health counselor were not substantially equivalent to an adversarial interrogation during a deposition, and thus there was no other source for the information. 837 N.W.2d at 197. Here, Hoose already had the information from law enforcement officers who spoke with D.H., and Hoose simply sought to find any inconsistencies. Further, nothing was found during the first in-camera inspection, and we are doubtful the last two or three years of records would be fruitful to Hoose. Moreover, we are unable to reach the same conclusion under these facts as in *Neiderbach* as we would expect D.H.'s reports to law enforcement officers to be substantially equivalent to anything she may have expressed to a mental health counselor. Unlike a deposition, both a law enforcement officer and mental health counselor are trying to provide aid to the individual. We find no error in the trial court's refusal to conduct a second in camera review of D.H.'s mental health and medical records.

### D. Previous Allegations.

Hoose contends the district court abused its discretion in determining that other sexual abuse allegations made by D.H. were not admissible at trial. The district court found that Hoose failed to meet the threshold requirement of showing the statements were false, based on a preponderance of the evidence.

Iowa Rule of Evidence 5.412 is the "rape shield law" and it provides, "[I]n a criminal case in which a person is accused of sexual abuse, reputation or opinion evidence of the past sexual behavior of an alleged victim of such sexual abuse is

not admissible." The rule's purpose is "to protect the victim's privacy, encourage the reporting and prosecution of sex offenses, and prevent parties from delving into distracting, irrelevant matters." *State v. Alberts*, 722 N.W.2d 402, 409 (Iowa 2006). Prior false claims of sexual abuse are not protected by rape-shield laws. *State v. Baker*, 679 N.W.2d 7, 10 (Iowa 2004) ("Because a false allegation of sexual activity is not sexual behavior, such statements fall outside both the letter and the spirit of the rape-shield law."). A criminal defendant wishing to admit such claims "must first make a threshold showing to the trial judge outside the presence of the jury that (1) the complaining witness made the statements and (2) the statements are false, based on a preponderance of the evidence." *Alberts*, 722 N.W.2d at 409.

Here, Hoose filed a motion to determine the admissibility of four allegations of sexual abuse made by D.H. To meet his burden of showing the statements were false based on a preponderance of the evidence, Hoose offered D.H.'s deposition testimony when she was asked, "Besides what you're alleging that your father did to you, have you been sexually active with anyone else?" D.H. admitted to being sexually active with her boyfriend, but denied any other sexual activity. Hoose characterized this as a direct contradiction of D.H.'s four allegations of sexual abuse. Hoose also relied on the fact that one of D.H.'s allegations involved a "step-uncle" who molested her when she was "four or five years old." D.H.'s mother testified that she did not know who D.H. was referring to when she said step-uncle and further clarified that although D.H. has step-uncles, "nobody that would have been around when she was that age." The State countered that the mother had several men in and out of the house when

D.H. was around the ages four or five and it was possible she had referred to one of the men as a step-uncle even though the man was not technically a step-uncle. In other words, although D.H. may have misapplied the title of the person who abused her, there was no evidence the allegation itself was false.

In ruling Hoose had not met the threshold burden, the court stated:

> [S]exual activity, sort of suggests like a joint activity versus molestation. I'm not sure that everyone would understand the question or the phrase "sexual activity" to refer to being raped or molested or assaulted or those kind of things. I think that's kind of a vague question.
> . . . .
> My ruling is that the defense has not established by a preponderance of the evidence that the four statements in paragraph 5 of the motion to determine the admissibility of false allegations of sexual abuse were, in fact, false. And because the defense has not established by a preponderance of the evidence that those statements are false, then examining [D.H.] about those topics during her testimony would be a violation of the rape shield rule and therefore, my ruling is that these are not admissible.

We find the district court did not abuse its discretion. It is undisputed D.H. made prior allegations, but Hoose failed to show by a preponderance of the evidence that the allegations were false. Thus, the claims were protected by the rape shield law and were inadmissible at trial.

**IV. Conclusion.**

It is undisputed that Hoose was formally arrested on May 12, 2010, and he was aware of the charges he was being arrested for, so the reasonable person test is not applicable here. Because the second trial information alleges offenses occurring on different dates than the original charges levied, they are not the same, and the speedy indictment rule was not violated. Additionally, we find Hoose failed to meet the threshold requirement of a "reasonable probability that

the information sought is likely to contain exculpatory information," and there is no error in the trial court's refusal to conduct a second in camera review of D.H.'s mental health and medical records.  Also, because Hoose failed to show by a preponderance of the evidence that prior allegations made by D.H. were false, the claims are protected by the rape shield law, and the district court did not abuse its discretion in finding they were inadmissible at trial.  Finally, we preserve Hoose's claim of ineffective assistance for possible postconviction-relief proceedings, and we affirm.

**AFFIRMED.**