# IN THE COURT OF APPEALS OF IOWA

No. 19-2075
Filed December 16, 2020

**STATE OF IOWA,**
 Plaintiff-Appellant,

**vs.**

**MARK BERNARD RETTERATH,**
 Defendant-Appellee.
_____

Appeal from the Iowa District Court for Mitchell County, James M. Drew, Judge.

The State appeals an order granting the defendant a new trial on his conviction for solicitation to commit murder. **REVERSED AND REMANDED WITH DIRECTIONS.**

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellant.

Alfredo Parrish, Gina Messamer, and Jessica Donels of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann L.L.P., Des Moines, for appellee.

Heard by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

This criminal case returns to our court after an unexpected development. First Mark Retterath appealed. We conditionally affirmed his conviction for solicitation to commit murder. *State v. Retterath*, No. 16-1710, 2017 WL 6516729, at *7 (Iowa Ct. App. Dec. 20, 2017).[1] But we remanded for the district court to perform an in camera review of counseling records for two State's witnesses, Aaron Sellers and J.R. *Id.* at *11. Their testimony was crucial in proving solicitation. On remand, the court ordered a new trial on the solicitation conviction after the federal government refused to turn over Sellers's counseling records. The court reasoned that under our remand order Retterath was entitled to a review of those records. And without that review, "any doubt must be resolved in Retterath's favor and granting a new trial is the appropriate relief."

Now the State appeals. The prosecution argues the district court misinterpreted our remand order and improperly awarded a new trial. That argument has sway. In retrospect, our remand order did not contemplate that Sellers's counseling records would be unavailable. What we did expect was compliance with Iowa Code section 622.10(4) (2016) and its focus on exculpatory evidence. That statute does not presume exculpatory evidence exists if the court cannot review the records. Without that presumption, the unavailability of Sellers's records does not compel retrial. So we reverse the order granting a new trial. We also remand for the district court to perform an in camera review of J.R.'s records, as directed in the first appeal.

---

[1] We also affirmed his conviction for third-degree sexual abuse and reversed his conviction for attempted murder. *Retterath*, 2017 WL 6516729, at *5, *9.

## I.      Facts and Prior Proceedings

Sellers has three felony convictions for drug and gun crimes.  He served eleven years in federal prison and discharged his sentence in November 2013.  A few months later, Sellers met Retterath at an Alcoholics Anonymous (AA) meeting, and they became "fast friends."

As his camaraderie with Sellers flourished, Retterath faced molestation accusations from family friend, C.L.  So after his February 2015 arrest on sexual abuse charges, Retterath turned to Sellers for help.  Or at least that was the testimony Sellers gave at Retterath's trial.  Sellers told the jury that Retterath asked him to kill C.L.  Believing his friend was falsely accused, Sellers entertained Retterath's entreaty.  But Sellers eventually made it clear that he "wasn't interested" in committing murder.  Not giving up, Retterath asked Sellers if he knew anyone who might be willing to kill C.L.  Sellers testified: "I said I know people who might be but I don't truck with them people anymore."

Meanwhile, Retterath consulted another AA associate, J.R., about killing C.L.  In conversations with J.R., Retterath "was always expressing his anger towards [C.L.]."  They discussed mimicking an episode of the television show *Breaking Bad*[2] to bring about the accuser's demise:

> [Retterath] wished [C.L.] would just OD sometimes.  There was a time he talked about the ricin and he wanted to have me help him put it on the [family's] property somewhere where [C.L.] would possibly stumble across it.

---

[2] *Breaking Bad* was a "critically acclaimed television show" produced and marketed by AMC Networks, Inc. from 2008 to 2013.  *See United States v. Rodriguez*, 125 F. Supp. 3d 1216, 1239 n.9 (D.N.M. 2015).  J.R. testified he watched the show on Netflix, a video streaming service, and shared the plot details with Retterath.

And he wanted it put in a bag of drugs, either methamphetamine, preferably heroin. So [C.L.] would—being a drug addict, he would hopefully shoot it up.

But after Retterath ordered castor beans to concoct the poisonous ricin, J.R. and Sellers decided it was time to call police. Their information prompted officers to obtain a warrant to search Retterath's property, where they secured corroborating evidence. Based on the new proof, in April 2016, the State added charges of solicitation to commit murder and attempted murder to the pending sexual abuse charges.

Soon after the State amended the trial information, Retterath moved for an in camera review of Sellers's mental health records under Iowa Code section 622.10(4). As an offer of proof, Retterath provided information that, among other mental-health issues, Sellers reported having auditory hallucinations—"he hears things that are not actually there." Citing his own depositions, the motion alleged that Sellers had been diagnosed with post-traumatic stress disorder and schizophrenia. The motion also noted Sellers was "on full disability for a mental health disorder." Finally, the motion asserted "Sellers has had his federal supervised release revoked in the past for failure to participate in mental health treatment."

In a separate motion, Retterath also sought an in camera review of J.R.'s mental-health records. Retterath alleged that J.R. had received inpatient psychiatric treatment that could affect the veracity of his testimony.

The State resisted both motions to produce the witnesses' mental-health records. In an argument that it has since abandoned, the State urged that in camera review was not warranted because "the records would only contain

impeachment evidence as opposed to exculpatory evidence." The district court accepted the State's position and denied the defense request for records.

In the first appeal, we decided Retterath established that both Sellers and J.R. had a history of psychiatric conditions that could impact their reliability as witnesses. *Retterath*, 2017 WL 6516729, at *11. Citing *State v. Neiderbach*, 837 N.W.2d 180, 220 (Iowa 2013), we decided the defense "made a plausible showing (1) exculpatory evidence could be unearthed in their mental health records and (2) the critical information was not available from another source." *Id.* Thus we remanded the case "to allow the district court to conduct [an in camera] review under section 622.10(4)(a)(2) to determine whether their records contain exculpatory information." *Id.*

Then we addressed the possible remedies:

If the district court finds no exculpatory evidence, Retterath's conviction for solicitation to commit murder is affirmed. If the district court finds exculpatory evidence in those records, then the district court should perform the balancing test outlined in paragraphs (2)(c) and (d) to assess whether Retterath is entitled to a new trial on the conviction for solicitation to commit murder.

*Id.*

On remand, the State subpoenaed the mental-health records of both witnesses. The State secured J.R.'s records for the court's in camera review. But the State could not obtain the requested records for Sellers. The prosecutor explained that Sellers's records were "in the possession and control of the Federal Government (i.e. Social Security Administration and Probation and Parole)." And that those federal agencies "refused to comply with the state subpoena issued to them citing federal rules regarding privacy and confidentiality." Given that

roadblock, the district court suggested the prosecutor seek Sellers's consent to release the records. He declined. Having reached a dead end, the State informed the court in June 2019 that it had exhausted its ability to obtain Sellers's confidential records. The State requested "the burden of obtaining said records now be placed on the defense."

In response, Retterath moved to dismiss the solicitation count, alleging the State violated the remand order. The State resisted, contending the only two options on remand were to affirm or to order a new trial. The court agreed with the State and denied Retterath's motion to dismiss. After ruling out dismissal, the court grappled with the remaining question: Did the unavailability of Sellers's mental-health records entitle Retterath to a redo? The court read our remand order as requiring a new trial under these circumstances:

> The court respects Sellers'[s] right to maintain his privacy. However, Retterath's rights must also be respected. The court is unable to perform the required process on remand as directed by the court of appeals. Therefore, it is the court's opinion that any doubt must be resolved in Retterath's favor and granting a new trial is the appropriate relief.

Disagreeing, the State appealed.

## II.      Scope and Standards of Review

The scope of the remand is "limited strictly" to the terms of our order. *See State v. Johnson*, 298 N.W.2d 293, 294 (Iowa 1980). The district court must "conduct whatever proceedings" we mandated and make its determination from there. *Id.* Because the court's new-trial grant required interpretation of the remand order and the relevant statutes, we review the ruling for correction of errors at law. *See Taylor v. State*, 632 N.W.2d 891, 894 (Iowa 2001).

### III. Analysis

In remanding to the district court for an in camera inspection of Sellers's mental health records, we followed the lead of our supreme court. *See State v. Edouard*, 854 N.W.2d 421, 442 (Iowa 2014) (remanding for in camera review of the victim's records), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016); *Neiderbach*, 837 N.W.2d at 198 (remanding for in camera review of a codefendant's records); *see also State v. Leedom*, 938 N.W.2d 177, 188 (Iowa 2020) (encouraging district court judges in close cases to examine records in camera). But in Retterath's case, the district court faced a predicament—how to follow our remand order when Sellers's records proved unavailable.[3]

The court resolved that predicament by deciding, first, that Retterath was entitled to an in camera review of Sellers's records. And, second, lacking those records, it had to resolve "any doubt" in Retterath's favor and grant a new trial.

Challenging that grant, the State argues retrial was "not a foregone conclusion." Because Sellers's records were "unobtainable," the State contends "their contents are automatically immaterial." The State poses the counterfactual: What if the court had granted Retterath's request to review these records before trial and found out then they were unavailable? The State asserts the trial would have been unaffected. As things stand, the State contends Retterath cannot show prejudice from any error in the original discovery order.

---

[3] Neither party questions the premise that the records were beyond the reach of the state court.

In defense of the retrial ruling,[4] Retterath argues the district court was correct to resolve any doubt in his favor. He asserts that without Sellers's records, he has "no way" to "affirmatively establish prejudice." He argues the legislature did not create the rights under section 622.10(4) without the intent for someone in his position to have a remedy.

To assess the parties' positions, we find it helpful to recall section 622.10(4)'s origin story. That story opens with *State v. Cashen*, 789 N.W.2d 400, 408–10 (Iowa 2010), in which the majority of our supreme court drafted a protocol for criminal defendants to obtain access to the mental-health records of their accusers.[5] The *Cashen* protocol featured a balancing test between the accusers' right to privacy and the defendants' right to produce evidence relevant to their innocence. 789 N.W.2d at 407. The *Cashen* majority held: "Because of the importance of the public interest in not convicting an innocent person of a crime, any standard should resolve doubts in favor of disclosure." *Id.* at 407–08. That standard did not sit well with the *Cashen* dissent. *Id.* at 411–17 (Cady, J., dissenting). Justice Cady bemoaned the blow to the confidentiality of private

---

[4] Retterath also resurrects his trial position that the district court should have dismissed the solicitation prosecution rather than granting a new trial. The State contends we cannot consider this argument because Retterath did not cross-appeal. We agree. "[A] party who has not appealed is not entitled to a ruling more favorable than it obtained in the trial court." *See Fed. Land Bank of Omaha v. Dunkelberger*, 499 N.W.2d 305, 308 (Iowa Ct. App. 1993).

[5] Reaching further back, *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006), foreshadowed the *Cashen* protocol. In that case, the court allowed Heemstra to obtain the medical records of the homicide victim to help prepare his defense. *Heemstra*, 721 N.W.2d at 563 (announcing a compelling-need test to resolve clash between competing interests of victim's confidentiality and a fair trial).

counseling records, attacking the majority's relevancy test for failing to require a compelling need for disclosure. *Id.* at 415.

Fast forward to the next legislative session. The general assembly addressed Justice Cady's concerns by enacting section 622.10(4). *See* 2011 Iowa Acts ch. 8, § 3; *see also State v. Thompson*, 836 N.W.2d 470, 481 (Iowa 2013) ("We must interpret the resulting statutory enactment mindful of the legislature's purpose to supersede the *Cashen* test with a protocol that restores protection for the confidentiality of counseling records while also protecting the due process rights of defendants."). The new subsection returned the expectation of confidentiality, unless a criminal defendant seeking access to privilege records could make certain showings. Iowa Code § 622.10(4)(a).[6]

---

[6] Iowa Code section 622.10(4)(a) provides:
> Except as otherwise provided in this subsection, the confidentiality privilege under this section shall be absolute with regard to a criminal action and this section shall not be construed to authorize or require the disclosure of any privileged records to a defendant in a criminal action unless either of the following occur:
>> (1) The privilege holder voluntarily waives the confidentiality privilege.
>> (2)(a) The defendant seeking access to privileged records under this section files a motion demonstrating in good faith a reasonable probability that the information sought is likely to contain exculpatory information that is not available from any other source and for which there is a compelling need for the defendant to present a defense in the case. Such a motion shall be filed not later than forty days after arraignment under seal of the court. Failure of the defendant to timely file such a motion constitutes a waiver of the right to seek access to privileged records under this section, but the court, for good cause shown, may grant relief from such waiver.
>> (b) Upon a showing of a reasonable probability that the privileged records sought may likely contain exculpatory information that is not available from any other source, the court shall conduct an in camera review of such records to determine whether exculpatory information is contained in such records.

Against that backdrop, we turn to the district court's reasoning. Without citing section 622.10(4), the court recognized Sellers's right to privacy but decided "any doubt" must tip toward Retterath's right to present a defense. At first glance, the court's default resembles the *Cashen* test, where the majority advised judges to "resolve doubts in favor of disclosure." 789 N.W.2d at 407–08. But that default diverges from the statutory language. At its foundation, the statute enshrines the confidentiality privilege for mental-health records as "absolute with regard to a criminal action." Iowa Code § 622.10(4)(a). The statute does not authorize disclosure to a defendant unless (1) the privilege holder waives confidentiality or (2) the defendant's request for access to the privileged information meets a threshold test. *See id.* § 622.10(4)(a)(1), (2).

In our view, Retterath's motion met the threshold requirement— "demonstrating in good faith a reasonable probability that the information sought is likely to contain exculpatory information that is not available from any other source and for which there is a compelling need for the defendant to present a defense in the case." *See id.* § 622.10(4)(a)(2)(a). As we explained in our first decision: "Retterath asserted Sellers experienced 'auditory hallucinations which

---

(c) If exculpatory information is contained in such records, the court shall balance the need to disclose such information against the privacy interest of the privilege holder.

(d) Upon the court's determination, in writing, that the privileged information sought is exculpatory and that there is a compelling need for such information that outweighs the privacy interest of the privilege holder, the court shall issue an order allowing the disclosure of only those portions of the records that contain the exculpatory information. The court's order shall also prohibit any further dissemination of the information to any person, other than the defendant, the defendant's attorney, and the prosecutor, unless otherwise authorized by the court.

are severe enough to warrant him receiving disability payments from Social Security.'" *Retterath*, 2017 WL 6516729, at \*11. That history of mental illness showed a reasonable probability that Sellers's counseling records would yield exculpatory information not available from another source and for which Retterath had a compelling need in countering the allegation that he solicited Sellers to kill C.L. True, the legislature did not define "exculpatory" in section 622.10(4). So our supreme court stepped into the breach. The court gave the term its "ordinary" meaning: "Exculpatory evidence tends to 'establish a criminal defendant's innocence.'" *Leedom*, 938 N.W.2d at 188 (citing *Exculpatory Evidence*, *Black's Law Dictionary* (11th ed. 2019)) (entertaining notion that "exculpatory" includes impeachment evidence).[7]

But showing a reasonable probability of exculpatory evidence is only step one. From there, the district court had a duty to inspect the counseling records to confirm that they indeed contained exculpatory evidence. *See* Iowa Code § 622.10(4)(a)(2)(b). Through no fault of its own, the court could not fulfill that duty. It turns out Sellers's counseling records, presumably from his time in federal prison, were unavailable from the federal agencies that controlled them. Without the records, the court could not identify any exculpatory evidence. And the court could not balance any compelling need to disclose exculpatory evidence against Sellers's privacy interests. *See id.* § 622.10(4)(a)(2)(c). With no information to disclose to Retterath, his counsel, or the prosecutor, no reason exists to order a new trial. *See id.* § 622.10(4)(a)(2)(d). No language in section 622.10(4)(a)(2)

---

[7] Indeed, the State recognized in its reply brief that *Leedom* equated impeachment and exculpatory evidence.

provides that, without access to mental health records for a State's witness, we presume the existence of exculpatory evidence material to the defense.[8]

Retterath suggests a new trial without Sellers's testimony is the only way to "vindicate" the "right" provided in section 622.10(4).[9]   Retterath's suggestion overstates the purpose of these evidentiary provisions for three reasons.  First, the statute "generally prohibits disclosure of confidential communications between mental health professionals and their patients."  *Leedom*, 938 N.W.2d at 186.  Second, the two exceptions to confidentiality under section 622.10(4)(a) scale back the breadth of disclosure allowed under *Cashen* while maintaining defendants' due process protections.  *See Thompson*, 836 N.W.2d at 490 (holding limits to obtaining records under section 622.10(4) were constitutional).  Third, and most important, the drafters did not envision a recalcitrant records holder like we have today.  Or at least they did not include a step in the protocol to remedy this unusual stalemate.

Without guidance in our statute, Retterath looks to case law from other jurisdictions for a remedy.  Those courts recognized the ability to exclude a witness's testimony if the defendant makes the threshold showing necessary to trigger an in camera review of a witness's mental-health records and that witness declines to waive the privilege.  *See State v. Esposito*, 471 A.2d 949, 956 (Conn.

---

[8] Conceptually, it helps to contrast this situation with spoliation of evidence.  Under that doctrine, when the State intentionally destroys evidence, a fact finder may infer that the missing evidence was unfavorable to the prosecution.  *See State v. Hartsfield*, 681 N.W.2d 626, 630 (Iowa 2004).  By contrast, section 622.10(4) features no favorable inference for a defendant who cannot obtain the counseling records for a State's witness.

[9] The district court's new-trial order did not specify that it would exclude Sellers as a witness.

1984); *People v. Stanaway*, 521 N.W.2d 557, 562 (Mi. 1994); *State v. Trammell*, 435 N.W.2d 197, 201 (Neb. 1989); *State v. Gonzales*, 912 P.2d 297, 303 (N. Mex. Ct. App. 1996); *State v. Shiffra*, 499 N.W.2d 719 (Wis. 1993), *modified on other grounds in State v. Green*, 646 N.W.2d 298 (Wis. 2002). Because the witnesses in those cases had an absolute privilege not to reveal their counseling records, the courts decided exclusion was a possible remedy when the privilege interfered with the defendant's constitutional rights.[10]

By contrast, our legislature has qualified the privilege for witnesses in some criminal cases. Section 622.10(4)(a) forces in camera disclosure of privileged records in two scenarios. Review comes either (1) by the privilege holder's voluntary waiver or (2) by a defense motion alleging in good faith a reasonable probability the records contain exculpatory evidence not available from another source and for which there is a compelling need in defending the case. Sellers refused to waive his privilege. So we are on the second track. But without access to Sellers's records, the court cannot determine whether they contain exculpatory evidence that would outweigh Sellers's privacy interests. The statute does not require exclusion of the witness's testimony if the records are not available.

The unavailability of Sellers's mental-health records did not entitle Retterath to retrial under section 622.10(4)(a)(2). We reverse the district court's order granting a new trial. But we also recognize a bit of unfinished business. Both parties asserted at oral argument that the district court had yet to perform an in

---

[10] Retterath does not assert a constitutional violation. In fact, he contends: "It is immaterial if [his] due process rights were violated." Thus any constitutional basis for excluding Sellers's testimony has not been litigated.

camera review of J.R.'s mental-health records.  We therefore remand for that to happen.

**REVERSED AND REMANDED WITH DIRECTIONS.**